Henderson, Chief Justice.
I concur in the opinion delivered by Judge lluppiN, that the acquittal of all the conspirators but one necessarily amounts to the acquittal of that one also. For altho’ in the abstract, his guilt depends not upon the conviction of his co-conspirators, but in their participation in the criminal design, yet in law their acquittal shall be taken as conclusive evidence of the want of that participation, as the acquittal of the principal offender necessarily acquits the accessory. The authorities are numerous on the latter proposition j and. indeed so far do they go, that if after the attainder of the *580 accessory, who bad consented to be tried before his principal, (and without such consent he could not have been tried,) the principal liad afterwards been tried and acv quitted,- that acquittal ipso facto reverses the attainder of the accessory, and all its continuing consequences are Wiped away, as corruption of blood, all civil disabilities and the like; and consequently the lord’s title by es-cheat is so effectually gone, that the heir of the attainted may enter upon him, arid is not put to his action. If the sentence of the law has not been executed upon him, the judgment is reversed, and the sentence of death or other punishment falls to the ground with the attainder 5 and this as well in oases where they are charged in separate indictments, and of course tried at several times and by different inquests, as where they are jointly indicted, and put on their trials together, and consequently-tried by tlr* same inquest. Cases are not wanting to show, that upon trials for conspiracy, the verdict cannot rightfully affirm the guilt of one, and the innocence of all the others. The furthest they go that way is, to sustain the conviction of one conspirator, where the other is dead, or not taken. But this is done expressly on the ground, that the verdict affirms the guilt of both. I have seen no case, where, after the trial and conviction of one, conspirator, the other (not then being taken) is afterwards brought in, tried &nd acquitted. But if the ground taken to support the verdict, before he is brought in, to-wit, that (lie verdict affirms his guilt, is the one on which it rests (of which there can be no doubt) it is, in such cases, taken away ; for the latter verdict affirms bis innocence. And if the reason of the rule be any thing, and the analogies worth preserving, it must, as in cases of principal and accessory, ipso facto, reverse the first judgment.
It will be perceived, that a strict analogy has not been kept up between cases of this kind, and those of principal and accessory, j for the accessory cannot be com- *581 pelted to try before the principal has been convicted, or at the same time with him- In that case, the trial of the principal, in point, of fact, precedes the trial of the acres» sory ; and in all cases, the death of the principal before conviction, amounts to an acquittal of the accessory. But, as stated before, the cases have preserved the principle. They expressly negative all idea of affirming the guilt of one conspirator, and the innocence of all bis co-conspirators. For the conviction of one is sustained on the sole ground, that it affirms the guilt of the other, or others.
The record, taken altogether (for I put the Judge’s instructions into the record) affirms, that Tam and Do-num did conspire to murder Duncan, and that Donum and Tom did not conspire to commit the same murder. "Which shall we take ? We are asked to take that affirmation, which fixes upon Tom the fact, of conspiring, because fie was then on trial; and to disregard the affirmation, which acquits him of it, because he was not then on trial. But the same principle, of humanity, which imparts to the accessory the benefit of the acquittal of his principal, demands that we should accord to Tom the benefit of Donum’s acquittal ; without whose participation, lie, Tom, could not be guilty. For if bangs in equal balance, which affirmation is true. Can we then doubt, which should be taken as a ground of action ? Give to the record what it really amounts to, and it is this : that Tom proposed to Domini to murder Duncan, and that Donum declined to accede to the proposition. This is the extent of Tom’s guilt, giving to ever} part of the record its due weight; and this is not the offence for which Tam stands indicted. For there cannot be a conspiracy, unless at least two unite in an agreement to commit the criminal or prohibited act. I cárt very readily imagine cases, where there may be sufficient evidence to convict one, without its being sufficient to convict the other; as the. confessions of the party, which afs *582 feci him, and not the companion, as probably was the case boro. The samo thing might, as well happen in ac-cessorial offences $ arid it is conceded, that in those cases, the legal <cuilt of the accessory is dependent on the conviction of bis principal.
A f-w woods only, in addition to what was said by Judge Uve fin, as to the nature of the conspiracy, and upon the question whether it is within the act of 1802, (Éev. c. 618). The words <>f that act are, “ if any number of negroes or other slaves shall, at any time hereafter, consult, advise or conspire, to rebel or make insurrection, or shall plot or conspire the murder of any person or persons whatsoever, every such consulting,” &c. I would here remark in passing, that by the very words of the act, one person only cannot be guilty of the crime created by it. It is contended, that no murder comes within the act, but one connected with; or in furtherance of the rebellious intent spoken of in the act. 1 think that this construction can be supported, neither b> the words of the clause, nor the context of the act. The crime of murder is a well known and well defined offence, it may be committed in connection with, or in furtherance of the rebellious intent spoken of in (lie act, or in execution of various other designs ; or its commission may be the ultimate intent. To ascertain the crime, as defined by the words, we need not look into other parts of the act. It is sufficiently marked by the words plot or conspire the murder of any one. Nor do the words of the preceding clause look to the murder, as consummating the conspiracy, or as the means of effecting the object. The conspiracy may be complete without contemplating a murder. It contemplates throwing off their servile state. It is true, murder may, and almost certainly would attend its completion. But it does not follow, that by conspiring to rebel, they thereby conspire directly to commit murder j at least, not the murder of a particular individual, which is th* murder provided for *583 in the act. But (o my mind, there is an insurmountable objection to confining it to such murders. It would make the clause, in regard to murders, entirely useless. For if such murders only were intended to be embraced, they are sufficiently provided for by the clause relating to rebellion, or making insurrection. For the conspiring to commit murder.1 in furtherance of such a rebellious design, would certainly fail within the prohibition against conspiring to rebel. The offence would be complete by the conspiracy to rebel. The contemplated murder would. be but a means to that end. For the construction asked for, to-wit. that it should be in furtherance of, or in connection with such design, presupposes such design to be formed. To confine it to such cases, therefore, would be to render the clause entirely useless.
Per Curiam. — Let the judgment of the Court below be reversed, and a now trial granted.